PAVEY ET AL. *v.* PAVEY, MAYOR ET AL.

[No. 27,714.  Filed June 8, 1942.]

*George Sands,* of South Bend, for appellants.

*Nathan Levy* and *Joseph A. Roper,* both of South Bend, for appellees.

FANSLER, J.—This is an action by the trustees of the police pension fund of the City of South Bend against the mayor, controller, and members of the common council of the city, seeking a declaratory judgment construing chapter 107 of the Acts of 1937 (Acts 1937, page 496), § 48-6402, Burns' 1933 (Supp.), § 11818, Baldwin's Supp. 1941. The controversy arose over the

construction to be placed upon subsection (b) of section 2 of the act.

The police pension system was organized under the act of 1925 (Acts 1925, ch. 51, p. 167), of which the act under discussion is an amendment. A considerable fund had been accumulated by the trustees, which was invested in interest-bearing securities under the terms of the act. The sources from which funds are derived for pension purposes under the amended act are substantially the same as in the past, except that provision is made for an additional tax levy to meet estimated deficits. The fund is derived primarily from four sources: (1) Gifts, (2) fees and awards granted to members of the force, fines imposed on members of the force, and proceeds from the sale of lost, stolen, strayed, and confiscated property, (3) assessments levied on members of the force who are beneficiaries of the pension fund, and (4) a tax of two-tenths of one mill levied upon the property of the city. Under the former act, funds so derived were used in so far as necessary to pay pensions and other benefits, and the remainder was invested and known as the police pension fund. Under the present law, it is provided that, if in the judgment of the trustees of the fund "the amount of money which will be available for any year, and from whatsoever source derived, will be insufficient to pay the benefits, pensions and retirement allowances," the board shall prepare an itemized estimate "of the amount of money which will be receipted into and disbursed from the police pension fund during the fiscal year next ensuing. The estimated receipts so set forth shall consist of the several items enumerated in sub-section (a). . . . ." These are the items above referred to. "The estimated disbursements as prepared and submitted by the board shall consist of an estimate of the amount

of money which will be needed by the board, during the fiscal year next ensuing, to defray the expenses and obligations incurred and which will be incurred by the board in making the payments prescribed in this act to retired members, to members who are eligible to and expect to retire during the ensuing fiscal year, and to the dependents of deceased members." It is noted that this omits expenditures which may be necessary in paying temporary benefits to those who have suffered injury or physical disability, and possibly, when strictly construed, it does not include certain funeral benefits when they are payable to the estate or heirs. The provisions continue: "At the time when the estimates are prepared and submitted, the board shall likewise prepare and submit a certified statement showing the name, age and the date of retirement of each retired member and the monthly and yearly amount of the payment to which such retired member is entitled; the name and the age of each member who is eligible to and expects to retire during the fiscal year next ensuing, the date on which such member expects to retire, and the monthly and yearly amount of the payment which such member will be entitled to receive; and the name and the age of each dependent, the date on which such dependent became a dependent, the date on which such dependent will cease to be a dependent by reason of his attaining the age at which dependents cease to be dependents, and the monthly and yearly amount of the payment to which such dependent is entitled. The total receipts shall be deducted from the total expenditures as set forth in such itemized estimate and the amount of the excess of the estimated expenditures over the estimated receipts shall be paid by such city, in the same manner as other lawful expenses of such city are paid, and a tax levy shall be made annually for that

purpose, as hereinafter provided. Except as herein otherwise provided, the estimates so submitted shall be prepared and filed in the same manner and form and at the same time that the estimates of other city officers and departments are prepared and filed, as provided by law. In the year 1937, and annually thereafter, at the time provided by law, the common council of such city shall levy a tax in such amount and at such rate as will be necessary to produce the revenue to pay that proportion of the police pensions which the city is obligated to pay, as hereinbefore provided. All money derived from such levy is hereby appropriated to the board of trustees of the police pension fund for the exclusive use of the police pensions and benefits. The respective amounts set forth in such estimated disbursements, if found to be correct, and in conformity with the data submitted in the certified statement hereinbefore provided for, shall be a binding obligation upon such city, and the common council shall make a levy therefor which will yield an amount equal to such estimated disbursements, less the amount of the estimated receipts, and neither the county board of tax adjustment nor the state board of tax commissioners shall have any power to reduce the levy so made, any law of this state to the contrary notwithstanding. The funds derived from the tax levy authorized by the provisions of sub-section (a) of this section shall not be invested but shall be used for the exclusive purpose of paying such pensions and benefits as the board is obligated to pay, and shall be in addition to any and all money derived from the income on the invested funds of the board."

The next section of the amended act provides: "The board of trustees of such police pension shall determine how much of such fund may be safely invested, and

how much shall be retained for the needs, demands and exigencies of the fund." It then reenacts the provisions concerning the character of investments, and provides: "Such fund shall be used and devoted to the following purposes: . . ." The purposes are: (1) The payment of temporary benefits for personal injury and physical or mental disability; (2) to the payment of pensions upon retirement for physical disability; (3) to the payment of pensions upon age retirement; (4) to the payment of funeral benefits and benefits to dependents; and (5) to the payment of pensions to members who are dismissed from the service under certain circumstances.

It is the contention of the plaintiffs (appellants) that, in determining the revenue available for any year, only interest from the invested fund and the two-tenths of one mill tax levy are to be considered as income; that funds accruing to the board from gifts, fees, awards, sales of property, and assessments upon members are to be invested, and not used for current demands; that the amount of pensions is to be estimated; that the interest received from investments and the two-tenths of one mill tax are to be deducted, and the difference is the amount of the tax which the council is required to levy under the new provision for taxation.

The defendants (appellees) contend, and the trial court held, that accruals to the fund from all sources during the current year must be used, and that the entire fund must be exhausted and all the securities sold to make funds to pay current pensions before a tax can be levied to make up a deficiency.

The appellants' contention finds difficulty in the provision that: "The estimated receipts so set forth shall consist of the several items enumerated in sub-section (a) of this section." The contention that all of the

items enumerated in subsection (a), except the two-tenths of one mill tax, are to be ignored in estimating the receipts for the year cannot be reconciled with this unequivocal and unambiguous provision. On the other hand, the appellees' contention finds trouble in disposing of the provision that: "The funds derived from the tax levy authorized by the provisions of sub-section (a) of this section (two-tenths of one mill tax) shall not be invested but shall be used for the exclusive purpose of paying such pensions and benefits as the board is obligated to pay, and shall be in addition to any and all money derived from the income on the invested funds of the board." This provision seems to contemplate the investment of funds received from sources other than taxation, and by the section that follows the rules governing investments are amended and restated.

The statute is not free from ambiguities. Isolated passages seem to support the contentions of each side, but we think the legislative intent is explained early in subsection (b). It is provided that the board shall "prepare an itemized estimate, . . . of the amount of money which will be receipted into and disbursed from the police pension fund during the fiscal year next ensuing," and that: "The estimated receipts so set forth shall consist of the several items enumerated in sub-section (a) of this section." Funds already on hand and invested as a permanent fund are not generally considered as "receipted" during a current fiscal year. Receipts generally refer to new money. Subsection (a) fixes the sources from which new money is derived. The conclusion seems inevitable that if it was intended that receipts for the fiscal year should include the proceeds of the sale of securities in which the permanent fund is invested, and no deficiency appropriation should ever

be made unless the fund was entirely exhausted, language more appropriate to the expression of such an intention would have been used. If the legislative intention was what the language quoted would normally seem to imply, it requires a procedure different from that involved in the contentions of either party. Although the language quoted indicates that receipts shall consist of the items enumerated in subsection (a), which does not include interest upon the invested fund, there is other language, especially the provisions of amended section 3, which indicates that the interest is to be used in the payment of pensions, temporary benefits, and benefits to dependents. Subsection (b) speaks of annual anticipated disbursements as including only pensions to "retired members," to members who are eligible to and expected to retire during the fiscal year, and to dependents of deceased members. Perhaps it was not thought practical to estimate the amount that would be paid in temporary benefits due to sickness, injury, or other causes, and that the interest on the fund would be sufficient for these charges.

It is obvious that the Legislature intended to devise a procedure which would provide sufficient revenue for the payment of all of the prescribed and permitted obligations of the fund. We have been unable, however, to fit the language of the act to any definite and complete scheme of procedure without leaving something to intendment. The theories of both the appellants and the appellees conflict in so many points with the express language of the act and the general pension plan that both must be rejected. But both sides concede in argument that there is middle ground, which finds support in, and conflicts but little if any with, the express language of the act, and which seems consistent with the general purpose of the law.

We have been constrained therefore to adopt the view that it was intended that the invested fund shall be kept intact as nearly as may be in view of unanticipated demands during the year; that in estimating receipts the board shall include estimated current revenues, including interest on the fund; that in estimating disbursements the board shall include not only the disbursements specifically mentioned, but an estimate of requirements for temporary benefits, or that they shall deduct from the estimated income from interest on the fund an amount which will cover temporary benefits, which accomplishes the same result.

The estimate to be filed is required to include the items which are the basis of the estimated disbursements. It is provided: "The respective amounts set forth in such estimated disbursements, if found to be correct, and in conformity with the data submitted in the certified statement hereinbefore provided for, shall be a binding obligation upon such city, and the common council shall make a levy therefor which will yield an amount equal to such estimated disbursements, less the amount of the estimated receipts. . . ." This language treats the deficits in the same manner as any other claim against the city. There is no arbitrary discretion anywhere. All depends upon the correctness of the data submitted. The rest is mere computation. The city council is bound to appropriate a sufficient sum to cover the deficiency. The formula for ascertaining the amount is furnished by the statute. If the board and the council cannot reach the same result by computation, the courts must be resorted to. The statute vests no discretion in the controller or the mayor or any one to dictate any result except that indicated by the statutory formula.

The provision that: "All money derived from such

levy is hereby appropriated to the board of trustees of the police pension fund for the exclusive use of the police pensions and benefits," may be construed, it is agreed, as requiring that no part of such approprition shall become a part of the permanent invested fund, and that any unused portions shall lapse, and such a construction seems consistent with the general purposes of the amendments, which are designed to meet deficits and not to build up the permanent fund.

The statute is vague and indefinite in many respects. We find it difficult to announce with any degree of confidence just what is intended in respect to many essential details. We have looked for aid to the general purposes of the law, and have arrived at the conclusion that the construction above indicated can be most reasonably supposed to conform to the legislative intention.

The appellees have moved to dismiss this appeal upon the ground that the 1942 ordinances levying taxes have already been passed, and, since there has been no restraining order or injunction, a declaratory judgment in favor of the appellants would be of no avail.

At the time the action was begun, the complaint stated a cause of action for a declaratory judgment. The statute cast a burden upon the city, not only in respect to budgeting and the levy of a tax, but to pay the amount of the deficiency. It is provided that the deficit "shall be paid by such city, in the same manner as other lawful expenses of such city are paid, and a tax levy shall be made annually for that purpose, as hereinafter provided." The obligation to pay cannot be avoided by a failure to levy a tax in any particular year. There is no claim of laches. It is assumed that the failure to pay or levy the tax was because of a bona fide disagreement as to the meaning of the law, and that when it is finally judicially con-

strued, and the obligation of the city determined, proper steps will be taken to pay the obligation placed upon the city by the statute. The question is not moot. The motion to dismiss is overruled.

Judgment reversed, with instructions that judgment be entered conforming to the views herein expressed.

NOTE.—Reported in 42 N. E. (2d) 30.